FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TIFFANY M.,

                    Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                  Defendant.

NO:  1:19-CV-03017-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 10 and 17.  This matter was submitted for consideration

without oral argument.  The Plaintiff is represented by Attorney D. James Tree.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).

ORDER ~ 1

The Defendant is represented by Special Assistant United States Attorney Lisa Goldoftas. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 10, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 17.

## JURISDICTION

Plaintiff Tiffany M.[2] filed for supplemental security income and disability insurance benefits on February 3, 2015, alleging an onset date of December 28, 2012. Tr. 336-50. Benefits were denied initially, Tr. 164-70, and upon reconsideration, Tr. 173-84. A hearing before an administrative law judge ("ALJ") was conducted on February 9, 2017. Tr. 51-97. Plaintiff was represented by counsel and testified at the hearing. *Id.* The ALJ denied benefits, Tr. 12-42, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff was 27 years old at the time of the hearing. Tr. 89. She finished the eleventh grade, and has received her GED. Tr. 66, 88. She lives with her mother and brother. Tr. 62-63. Plaintiff has work history as a sales representative, cashier, telemarketer, cook helper, waitress, dining room attendant, customer service representative, and merchandise displayer. Tr. 63, 87-88. Plaintiff testified that she could not work because she has a hard time being alone, and she also has a hard time being around people she does not know and trust. Tr. 69.

Plaintiff testified that she was severely abused by her father for her entire life, and after being attacked him and pursuing legal action, she has had "really bad" days. Tr. 71-73, 85-86. She reported she has two therapy sessions every week, sees a gynecologist because of a bleeding disorder, an orthopedic doctor about her knee, and an ENT for her asthma. Tr. 79. Plaintiff alleges she is limited in her ability to work due to bipolar disorder, PTSD, depression, anxiety, PCOS, diabetes, high blood pressure, asthma, bronchitis, and GERD. Tr. 374.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to

ORDER ~ 3

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 28, 2012, the alleged onset date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments: morbid obesity, chronic lumbar strain, diabetes mellitus, asthma, menorrhagia, degenerative joint disease of the knees, status post partial menisectomy, affective disorder, anxiety disorder, and personality disorder.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then found that Plaintiff has the RFC

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some exceptions. [Plaintiff] requires a job with some of the duties performed seated and some of the job duties performed while standing or walking so she can, for example, be seated for a good portion of the day but also would need to get up to go get tools or files or drop something off to someone, instead of a job that involves all walking such as a hotel housekeeping type of job. [Plaintiff] can occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to excessive vibration, pulmonary irritants such as fumes and gases, and workplace hazards such as working with dangerous machinery and working at unprotected heights. [Plaintiff] can perform routine tasks, in a routine work environment with simple work related decisions, in which she has only superficial interaction with coworkers and occasional, superficial interaction with the public.

Tr. 22. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 32. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: assembler, document preparer, and toy stuffer. Tr. 33. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 28, 2012, through the date of the decision. Tr. 34.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered the medical opinion evidence;

2. Whether the ALJ erred at step three; and

3. Whether the ALJ properly considered Plaintiff's symptom claims.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered all of the mental health opinions in the record, including, examining physician C. Donald Williams, M.D., treating provider Susan Stolzenbach, PMHNP, and treating provider Starla Stone, LICSW. ECF No. 10 at 14-18.

*1. Dr. C. Donald Williams*

In June 2013, Dr. Williams examined Plaintiff and opined that she had marked limitations on her ability to make judgments on complex work-related decisions; and she had extreme limitations in her ability to interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 730-32. The ALJ gave this opinion "very little weight"

for several reasons. First, the ALJ generally found, without specific citation to the record, that

> [a]lthough Dr. Williams suggested [that Plaintiff] was cooperative and 'appeared' to make a good effort, . . . [Plaintiff's] presentation and statements during their interview were dramatically different from other evidence in the record. The suggestion [that Plaintiff] has numerous extreme limitations and is unable to work is inconsistent with the lack of observations of [Plaintiff] presenting in distress or discomfort in the majority of her encounters with medical personnel, the minimal psychiatric observations, [and] the normal mental status examination results.

Tr. 31. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In support of this finding, but discussed largely in the portion of her decision rejecting Plaintiff's symptom claims, the ALJ cited Dr. Williams' notations during the examination that Plaintiff wore "very ill-fitting clothes that appeared to not be recently laundered and were far too small for her size," carried a stuffed animal, "carried herself in a very childlike manner," and her "overall appearance verged on bizarre." Tr. 27, 725. The ALJ concluded that these observations by Dr. Williams were inconsistent with a consultative physical evaluation conducted two days before Dr. Williams' examination that noted "no such behavior," and treatment notes from the overall record indicating that Plaintiff was appropriately dressed and groomed, without any abnormal movement, normal speech, and appropriate content of thought. Tr. 27 (citing Tr. 720, 849, 863, 866-67).

However, the ALJ does not appear to consider that, in addition to his observations of Plaintiff during the evaluation, Dr. Williams also reviewed medical records and conducted his own mental status examination. Tr. 724-27. Notably, Dr. Williams found Plaintiff was cooperative, made good effort, her affect became more appropriate throughout the evaluation as she "became more comfortable," she was able to give focused and goal directed responses to questions, she was oriented, and she evidenced no difficulty following a conversation in the interview. Tr. 726-27. Thus, Dr. Williams' overall mental status findings, even as to Plaintiff's speech and affect, were not wholly inconsistent with the treatment notes cited by the ALJ. Moreover, as to the ALJ's finding of "inconsistencies in [Plaintiff's] appearance" between Dr. Williams' observations and the overall record, Plaintiff identifies evidence in the record that would tend to corroborate Dr. Williams' findings, including (1) additional observations that Plaintiff dressed in ill-fitting and provocative clothing, and (2) suggestions in treatment records that cuddling or holding a stuffed animal was a good technique to distract and self-soothe. ECF No. 10 at 13 (citing Tr. 814, 866, 891); ECF No. 18 at 5 (citing Tr. 234). While not acknowledged by the ALJ, Plaintiff also testified that her therapist brought in Barbie dolls in order help her feel "more comfortable." Tr. 80-81. And the Court notes that one of the records cited by the ALJ to support the finding that Plaintiff was generally observed to be "appropriately dressed and well groomed," actually notes that Plaintiff "is appropriately dressed and groomed, *but her breasts are exposed a lot*." Tr. 866 (emphasis added).

Finally, the ALJ generally notes, without citation, that Plaintiff's behavior at Dr. Williams' appointment, and the resulting extreme limitations opined, are inconsistent with "the lack of observations of [Plaintiff] presenting in distress or discomfort in the majority of her encounters with medical personnel, the minimal psychiatric observations, the normal mental status examination results." Tr. 31. However, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. Here, as noted above, the ALJ failed to properly summarize and interpret the entirety of Dr. Williams' clinical findings and conflicting evidence, including his objective mental status examination results; nor did the ALJ cite any specific evidence from the overall record specifically in support of her rejection of Dr. Williams' opinion. In particular, the ALJ failed to address Dr. Williams' identification of Plaintiff's depression and personality disorder as supporting the extreme limitations assessed, in addition to her "strange" appearance and behavior. Tr. 731. For all of these reasons, the ALJ's conclusory rejection of Dr. Williams' opinion because it was "dramatically different from other evidence in the record" was not specific, legitimate reason, and supported by substantial evidence.

Second, the ALJ generally found that Dr. Williams' observations of Plaintiff's during the examination, and the opined extreme limitations, are inconsistent with her activities.  Tr. 31.

> For example, Dr. Williams suggested that [Plaintiff] would be unable to respond appropriately to usual work situations, and that her appearance and behavior were 'so strange' they would not be tolerated in a normal work setting.  This suggestion is inconsistent with the indications [that Plaintiff] was professional with customers, coworkers, and supervisors for six weeks before she was terminated from her Costco job in December 2012.  In addition, as discussed [elsewhere in the decision, Plaintiff] said she lost the job because of missing too much work due to her polycystic ovarian syndrome, which is inconsistent with the contemporaneous treatment records at the end of 2012, and the lack of any such diagnosis in the medical records.

Tr. 31.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 601-02 (9th Cir. 1999).  However, as noted by Plaintiff, "this work occurred prior to the relevant period and is not necessarily probative towards her functioning more than a year later at Dr. Williams' evaluation, which was based on current functioning only."  ECF No. 10 at 16 (citing Tr. 731).  Plaintiff's work history and activities prior to the alleged onset date are of limited probative value.  *See*, *e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (holding that "[m]edical opinions that predate the alleged onset of disability are of limited relevance.").  Moreover, while certainly relevant to the ALJ's consideration of Plaintiff's symptom claims, the Court is unaware of, nor does the ALJ cite, legal authority for discounting an examining medical opinion based on an alleged inconsistency as to whether Plaintiff was fired from a job due to her claimed

impairments. And finally, as above, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. Here, the ALJ fails to offer any explanation of why Plaintiff's "activities" are inconsistent with the specific marked and extreme limitations opined by Dr. Williams. This was not a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject Dr. Williams' opinion.

Finally, the ALJ found that Plaintiff's "presentation during this evaluation was so different from other encounters around the same time it appears [that Plaintiff] was attempting to portray herself as more seriously limited and with extremely limiting mental health conditions." Tr. 31. Evidence that a claimant exaggerated his symptoms is a clear and convincing reason to reject the doctor's conclusions. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). However, Dr. Williams made no finding that Plaintiff was exaggerating her symptoms, or "attempting to portray herself as more seriously limited." Rather, as discussed above, despite noting that Plaintiff wore "ill-fitting clothes," carried a stuffed animal, and carried herself in a "childlike manner," Dr. Williams also noted that Plaintiff was fully cooperative, appeared to make a good effort to answer the questions, and was able to make focused and goal directed responses to the questions. Tr. 726. Thus, to the extent the ALJ rejected Dr. Williams' opinion

because it was based on exaggerated symptoms, this reason was not specific, legitimate, and supported by substantial evidence.

Based on the foregoing, the Court finds the ALJ did not properly consider Dr. Williams' opinion, and it must be reconsidered on remand.

### 2. *Starla Stone, LICSW*

In June 2016, Ms. Stone, Plaintiff's treating mental health provider, opined that Plaintiff had marked limitations in her ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 1031-32. In addition, Ms. Stone found Plaintiff had severe limitations in her ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and travel in unfamiliar places or use public transportation. Tr. 1031-32. Ms. Stone also opined that Plaintiff met a portion of the paragraph "C" criteria of mental listings, because

she has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate. Tr. 1033. Finally, Ms. Stone found Plaintiff would be likely to miss four or more days per month in a forty-hour work schedule. Tr. 1033.

The ALJ gave Ms. Stone's opinion little weight because it

> includes no explanation of the basis or support for her suggestions of extreme work related limitations, other than describing [Plaintiff's] 'stories and screenings,' and including copies of [Plaintiff's] self-assessments, which indicates heavy reliance on [Plaintiff's] subjective statements, which are inconsistent with the medical evidence of record []. These limitations are also inconsistent with the lack of observations of [Plaintiff] presenting in distress or discomfort in the majority of her encounters with medical personnel, the minimal psychiatric observations, the normal mental status examination results, and [Plaintiff's] activities.

Tr. 31-32. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041. Moreover, it is permissible for the ALJ to reject check-box reports that do not contain any explanation of the bases for their conclusions. *See Crane v. Shalala*, 79 F.3d 251, 253 (9th Cir. 1996); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

As an initial matter, the Court notes that the ALJ generally described Ms. Stone's "support for her suggestions of extreme work limitations" as merely "describing" Plaintiff's "stories and screenings." Tr. 31, 1034. However, the ALJ

ORDER ~ 17

fails to consider the entirety of the narrative attached to Ms. Stone's opinion. First, Ms. Stone did not generally cite Plaintiff's "stories and screenings" as the sole basis for her opinion. Rather, Ms. Stone referred to Plaintiff's "*scores* and screenings"; and further explained that those "scores and screenings show significant impairment with psychological, physical, social, emotional functioning. [Plaintiff] is current[ly] in counseling and in treatment for anxiety, depression, anger management and to resolve symptoms of PTSD." Tr. 1034. Moreover, while the ALJ is correct that Ms. Stone included "copies of [Plaintiff's] self-assessments" to explain her opinion, the ALJ fails to consider the long-standing treatment relationship between Plaintiff and Ms. Stone, and the more than two hundred pages of treatment notes over the course of their treatment relationship. *See* Tr. 1271-1510. In determining how much weight to give each opinion, Social Security regulations provide that the ALJ consider factors including the length and nature of the treatment relationship in evaluating a medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[w]hen the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.")).

Moreover, the Ninth Circuit has held that when a treating provider's check-box opinion is "based on significant experience with [Plaintiff] and supported by numerous records, [it is] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *See Garrison v. Colvin*, 759

ORDER ~ 18

F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").  Neither the ALJ, nor the Defendant, offers any specific evidence that Dr. Marks relied "to a large extent" on Plaintiff's subjective complaints as opposed to Ms. Stone's clinical findings over the course of their treatment relationship, including consistent test scores and screenings that indicated severe depression and anxiety.  *See, e.g.*, Tr. 1336, 1369, 1467, 1501. For all of these reasons, these were not specific and germane reasons for the ALJ to reject Ms. Stone's treating opinion.

In addition, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Reddick*, 157 F.3d at 725 ("This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").  Here, as above, the ALJ generally found, without citation to the record, that the limitations opined by Ms. Stone were inconsistent with "the lack of observations of [Plaintiff] presenting in distress or discomfort in the majority of her encounters with medical personnel, the minimal psychiatric observations, the normal mental status examination results, and [Plaintiff's] activities."  Tr. 31-32.  However, the ALJ again failed to summarize and interpret any of Ms. Stone's extensive clinical findings and conflicting evidence; nor did the ALJ cite any evidence from the overall record specifically to

ORDER ~ 19

support her rejection of the severe limitations opined by Ms. Stone. In particular, the ALJ entirely failed to address Ms. Stone's assessment that Plaintiff met "paragraph C" criteria at step three, and that she would be likely to miss four or more days a month if attempting a forty-hour workweek. Tr. 731. Based on the foregoing, the ALJ's conclusory rejection of Ms. Stone's opinion because it was "dramatically different from other evidence in the record" was not specific and germane.

The Court finds the ALJ did not properly consider Ms. Stone's treating opinion, and it must be reconsidered on remand.

### 3. Susan Stolzenbach, PMHMP

In July 2016, treating provider Ms. Stolzenbach opined that Plaintiff had marked limitations in her ability to travel in unfamiliar places or use public transportation, was likely to be off-task 12-20% of a forty-hour workweek, and was likely to miss four or more days per month if attempting to work a forty-hour workweek. Tr. 1057-58. The ALJ gave her opinion "very little weight" because the form "contains no explanation of the evidence relied on to suggest extreme limitations, such as [Plaintiff] missing four or more days per month of work if she was working full-time." Tr. 31. As with both opinions discussed above, the ALJ also summarily concluded, without citation to the record, that Ms. Stolzenbach's "extreme limitations" were inconsistent with the observations by medical providers, the normal mental status examination results, and Plaintiff's activities. Tr. 31. It is permissible for the ALJ to reject check-box reports that do not contain

any explanation of the bases for their conclusions. *See Crane*, 79 F.3d at 253; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

However, as noted by Plaintiff, it is unclear why the ALJ generally referenced the limitations opined by Ms. Stolzenbach as "extreme," when "Ms. Stolzenbach identified no 'extreme limitations' and actually offered a conservative opinion of primarily mild to moderate impairments, yet also with findings of absenteeism and off-task behavior." ECF No. 10 at 18 (citing Tr. 1056-58). Moreover, the ALJ offers the exact same vague finding discussed extensively above in relation to the other medical opinion evidence, namely, that Ms. Stolzenbach's assessment that Plaintiff would miss for or more days a month of work if she was working full time was not consistent with "lack of observations of Plaintiff in distress" and normal mental status examinations, without the requisite explanation of why the ALJ's interpretation of the facts and conflicting clinical evidence, as opposed to Ms. Stolzenbach's, is correct. *Reddick*, 157 F.3d at 725. In fact, while the ALJ summarily concludes that Ms. Stolzenbach provided "no explanation of the evidence relied on" to support her opinion, Ms. Stolzenbach's treatment notes include consistent clinical findings that Plaintiff was depressed, anxious, and had abnormal judgment and insight. Tr. 31. For all of these reasons, the ALJ's conclusory rejection of Ms. Stolzenbach's opinion because it was not sufficiently explained, and was inconsistent with the overall medical record and Plaintiff's activities, without the requisite interpretations of the "facts and

conflicting clinical evidence," is not supported by substantial evidence. This was not a germane reason for the ALJ to reject Ms. Stolzenbach's opinion.

As a final matter, an error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004)). However, the ALJ entirely failed to consider Ms. Stolzenbach's opinion that Plaintiff would be off task 12-20% of a forty-hour week schedule, and he would miss four or more days per month. Tr. 1058. The vocational expert testified that an employer would tolerate approximately 10% of off task work per day, and approximately six unscheduled absences in a year; "[a]nd anything more than that on an ongoing basis will likely lead to termination of employment." Tr. 91-92. Thus, the ALJ's failure to specifically consider Plaintiff's ability to stay on task and be at work cannot be considered harmless, as it was not inconsequential to the ultimate disability decision. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"). Ms. Stolzenbach's opinion must be reconsidered on remand.

**B. Additional Assignment of Error**

Plaintiff also challenges the ALJ's findings a step three, and the ALJ's consideration of Plaintiff's symptom claims. ECF No. 10 at 4-14, 18-20. At step three, the ALJ generally found the "evidence fails to establish the presence of the 'paragraph C' criteria." Tr. 21. However, as discussed above, the ALJ improperly

rejected the opinion of Ms. Stone, who specifically opined that Plaintiff would meet at least one component of the paragraph C criteria; and as noted by Plaintiff, the ALJ failed to consider Ms. Stone's opinion regarding paragraph C criteria at step three. ECF No. 10 at 19 (citing *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."). Because the analysis of 'paragraph C' criteria, and the entire step three finding, is dependent on the ALJ's proper evaluation of the relevant medical evidence, including the medical opinion evidence, the Court declines to address this challenge in detail here, and the step three finding must be reconsidered on remand.

Similarly, the ALJ discounts Plaintiff's symptom claims, at least in part, because they were inconsistent with Dr. Williams' observations during his evaluation of Plaintiff, and unsupported by observations and examinations performed by Plaintiff's treating providers. Thus, because the analysis of Plaintiff's symptom claims is dependent on the ALJ's evaluation of the medical evidence, including the three opinions that the ALJ is instructed to reconsider on remand, the Court declines to address this challenge in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial

ORDER ~ 24

evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert. In addition, the ALJ should reconsider Plaintiff's symptom claims, the step three finding, and the remaining steps in the sequential analysis. The ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 24, 2020.

<u>                *s/Fred Van Sickle*                </u>
Fred Van Sickle
Senior United States District Judge